May it please the Court, good morning, Council, greetings to New York. My name is Michael Levine, and I'm representing Mr. McElroy. Your Honors, I'm going to address three issues, the Feretta Waiver, the withdrawal or the failure to withdraw the defense exhibit, and what I'll refer to as the masturbation video. With respect to the Feretta Waiver, the waiver was invalid because my client was not informed of the meaning of supervised release. He was told there was going to be a supervised release term of five years to life. He was asked if he understood it. He said yes, but we've never taken a client's statement that he understands something as a dispositive question. Do you understand by pleading guilty, you understand all the rights you're giving up? Yes. That does not excuse a judge from determining that the waiver is, in fact, knowing and intelligent, and we have, while there's no prescribed script, we require a judge to engage in a colloquy to determine that, in fact, the defendant does know what he's giving up. Counsel, let me ask you this. At the time that the colloquy took place, the government was asking for a life sentence. Yes. Of course, if there were a life sentence, there wouldn't have been any release aspects at all. He never would have been out. That's true. So you have a situation where it might have happened, but I guess I wonder how far you have to go. Did the government have an obligation to tell him, look, there are a lot of different kinds of prisons in the federal system, and let me describe some of the ones that you might go to and how people eat lunch there and whether they have solitary confinement and so on. They don't have to do that, do they? No. Of course not. So the question is really what enabled him to make a knowing and intelligent decision under the circumstances? Now, we've got a couple of cases, Garrison, we've got Forrester, which I find both to be inapposite. They involve different issues. And it seems to me the real question is whether he received enough information regarding the possible penalties to make his waiver knowing and intelligent. Is that the standard? I agree with you. I agree. So what do we look to in this case to say that given the facts as they existed at the time of the hearing, that he didn't have the information he needed to make a knowing and intelligent waiver? Well, we look to the record. We look to what was said. We look to the fact that he has no legal training, that he's a layperson. We look to the fact that he's supposed to be, what the law says, he's supposed to be advised of the maximum penalties. Supervised release is part of the penalty. It's a... Not if it's a life sentence. True. But there was being, whether it was going to be a life sentence was being contested because that was the effect of the enhancement was being contested. There was a motion that was under submission and ultimately prevailed. So are you saying, are you saying counsel that before you can have a Faretta hearing where the defendant knowingly waives his rights, you have to complete sentencing. You really have to know everything that's going to happen because otherwise you're just speculating. Is that what you're saying? No, not everything, but important things. You have to know... You have to know important things, one of which is how long you're going to go to jail. That's very important, right? Yes, absolutely. So you're saying he would have to know before Faretta what his sentence was going to be. Is that right? He'd have to know before Faretta that if, in fact, that you weren't sentenced, if this enhancement didn't apply, you're still facing a maximum sentence of 50 years on count two or count one, I can't remember which, and you're still facing a supervised release term of life. And let me explain to you what supervised release is. Supervised release means it comes after, after you're sentenced to prison. I don't think we've ever required that the defendant be given an explanation of supervised release in the context of a Faretta hearing. It seems like we've only made that a requirement in Rule 11 proceedings, Rule 11 context. Why should we import that Rule 11 principle to Faretta, and wouldn't this raise all kinds of challenges, some of which Judge Smith here is talking about? Well, Your Honors, I point you to Carter v. McCarthy. That's a Ninth Circuit case decided in 1986. That was not a Rule 11 case. That was a habeas, federal habeas corpus case decided by this Court. It had a California plea cited in my opening brief, and there it wasn't, it was a special parole term. Under California law, there was a required special parole term that followed any sentence, but the defendant was never informed of what special parole was, what it meant, what would happen, and this Court found the plea invalid. Had nothing to do with Rule 11. But, if I recall correctly, that did not involve a life sentence. I can't recall, Your Honor, frankly. I think it was considerably less. So, understandably, if you're saying, you know, you got maybe 15 years, 20 years, then of course the release element is extremely important. I guess what I struggle with here is that it seems to me if you're correct, then you have to complete the sentencing before you have the forever hearing, because otherwise the defendant cannot possibly know all to which he, in this case, is going to be subject. That's not our law, is it? Judge, I respectfully disagree with that conclusion. I think that's carrying it way too far. All he has to know is what is supervised release. In other words, if I don't sentence you to life, your attorney is making a motion to strike the life. It may not be a life sentence, but let me tell you, if there is a term of years, you're going to be on supervised relief for life. Let me tell you what happens. That means if you violate, you go back to prison, and you can go back to prison for the rest of your life. You get supervised release again, and that can be repeated. He should know that. But that's speculative of what the Court's going to do. So let's just say hypothetically the Court had not followed the defense recommendation, had imposed the life sentence. We wouldn't even be talking about that with you. I agree with you. I agree with you. So what I'm struggling with here is where do you draw the line here? It seems to me that if you're right, you literally have to finish the sentencing before a forever hearing takes place, because then you know exactly what the guy is sentenced to, and you can explain exactly what each element of the punishment is. Judge, you don't have to. You could just — he just could have done it right there. As I just said, with all due respect, you don't have to wait. I agree that would be silly. You just — supervised release is an inherent part of the sentence. It is part of the punishment. So are you reading our requirement that a defendant be informed of possible penalties as possible penalties, and just including the possible key outcomes? Or how far does that possible penalties go? Direct consequences of the plea. One of them is supervised release. I'm not talking about subject to deportation. I'm not talking about collateral consequences. I'm talking about an essential part of a Federal sentence, which is supervised release. A defendant should understand what that is. Why would — why would not those other points be just as important? If it — say he was an illegal alien, and as the Supreme Court has recently indicated, that's extremely important. If you didn't tell him that, would he have a grounds under your statement here? He'd say, look, you know, when I had my FREDA hearing, they did not tell me that if I ever got to a certain point, I would be removed from the country. Well, I don't — I can't — that's a different case. It's not before us. It's an interesting point. But if you look at — we do know that although Rule 11 is — we don't have to follow the strictures of Rule 11 here. Rule 11 requires a statement about supervised release. All the — Godinez v. Moran says basically what you need to know, the voluntariness and knowingness of pleading guilty, is essentially the same as a FREDA waiver. You need to know the consequences and the punishments. And — It seems to me the unique aspect in this case is — is the enhancement and whether or not — the enhancement — Yes. — whether or not it may or may not apply. And I'm just — what do we do in these circumstances? Because I think that's — that's what the twist is here. But Mr. McElroy was not informed of the statutory maximum of 50 years. I think that's — That's another aspect of my argument, yes. And so sentencing guidelines are complicated. And I think our court noted in Gerritsen there's no way to know prior to trial whether a statutory sentencing enhancement for a prior conviction will apply later at the time. So the defendant faces a number of possible outcomes. So isn't that an unmanageable standard for us to require of the district court on — or what — what should happen when there's a possible enhancement? What — what should happen is if there's an enhancement, as there was in this case — and this is unique — if there's a life sentence enhancement — and that's hard — that does not happen in every case. Well, that's being challenged. That's being challenged. Uh-huh. That's being — that's being challenged. And where the judge has said, I'm going to consider this, I'm going to consider your motion. So that means there's a — there's a chance that there's — it's not — there's not going to be an enhancement. In that kind of case, the — there should be a statement of the — of supervised release and what it means. Yes. So that's — that's narrowing it down significantly. Well, all right. So you've got two things going on here. You've got supervised release, and then you have the possible penalty. Yes. For me, what was interesting is that he wasn't informed of the 50 years. That's true. That's a — All right. So — Go ahead. So let's just figure out — so what does it mean regarding the 50 years? And then you already talked, I think, about the supervised release. Well, under — And why doesn't Gerritsen control that situation? It's two-pronged. It's two-pronged. Well, Gerritsen was just a minor — I think it was between 22 years and 20 years. It was a trivial thing, to my reading, of the — of the distinction. Gerritsen is totally inapplicable here. Here, you have a failure to advise of the maximum 50-year sentence of the count. Under our case law — Under our previous case law — But he was told that he — excuse me. He was told that he faced a life sentence. Am I wrong? I'm sorry. I'm sorry, Your Honor. I — am I hearing — Was he told that he faced a — was he told that he faced a life sentence? Yes. If the enhanced — yes. And he knew — Yes. that that was a — that was a possibility that he could get life imprisonment. Yes. He knew that. Yes, he did. Yes, he did. Why isn't that the end of it? Well, because that depended on the — that depended on the validity of the enhancement. The — the government was — No, but that — that — that comes up later on at sentencing. I take guilty pleas all the time where I can't give guarantees as to what a particular sentence is likely to be or whether a particular enhancement will apply. What to me is significant is that he waived his right to — to counsel knowing that he faced the possibility of a life sentence. Yes. And also knowing — And I don't know — Go ahead. Yes. And also knowing that counsel had filed and the court had under submission a motion to strike the life enhancement. Yes. He knew all those things. He knew — he knew that, but he knew that that motion could fail. Yes, but he also knew — He knew — he — he knew when he was pleading guilty that one of the penalties that he could face was a life — not pleading guilty, when he was waiving his right to counsel, that he — that he — that that was — that was a possibility. Yes. That he could — and he chose, nevertheless, to represent himself. That's true. That's true. I don't dispute that. And it seems — it seems like — And I want to get — Oh, go ahead. I'm sorry. Go ahead. And that — and that gets back to your supervised release. It seems to me that — that if — if you know it's a possibility and you're willing to take the chance that you could get a life sentence, then the issue of supervised release becomes largely irrelevant, since you're not going to be released. Not if at the same — I mean, you're taking — what we have established in this country is the right to ineffective assistance of counsel. And he may have had the ineffective assistance of counsel, but he chose that. And he chose that knowing all of the risks. Well, can I get to my second issue, Your Honor? Sure. Go ahead. Well, this is the poster issue for why people shouldn't represent themselves. Probably be displayed in law school classes. Here, his able counsel had succeeded in keeping the judge, and the judge agreed not to introduce before the jury his prior conviction or the fact that he was a registered sex offender. But he, in his wisdom, fires his lawyer, enters the — has the phoretic colloquy, and then when he's representing himself, proceeds to introduce the very exhibit that identifies him as a registered sex offender. Now, the government says, well, that's invited error. No, that's not the issue. He introduced — he introduced it. But then, upon the government pointing out to the judge, saying, oh, he's opened the door, now I want to introduce the prior conviction, now I want to argue that he's a prior registered sex offender, at that point, before the jury sees the exhibit — this is all out of the presence of the jury, of course — before — before the jury sees the exhibit, Mr. McElroy says, okay, I've wondered — I want to withdraw the exhibit. I want — I want to withdraw the exhibit. The judge says, no, I'm not going to let you do that. It's in. Well, what would it have cost anybody to withdraw the exhibit? What would it have cost anybody to withdraw the exhibit? There was no prejudice to the government. None. No prejudice to the government. It was a simple act of, okay, withdraw the exhibit. There was — the government does not maintain there was any prejudice from that. All of the examination of the detective was all in. All the statements were in. The same arguments could have been made, and there would have been absolutely no prejudice. Instead, we have now the jury being — it's true the government did not overtly say — argue in closing argument, oh, he's a registered sex offender. And the government didn't argue that he had a prior conviction. It's true. But the government did subtly make use of the affidavit. It said, I want you to carefully read this exhibit. Carefully read it. With respect, we've let you go over a minute, but let me ask my colleagues — do any of my colleagues have further questions of counsel? No. Yeah, I have one question. Okay, go ahead. Did the jury — did the jury ask to see the exhibit? Did the jury ask to see the exhibit? Not at the time. It went to — it went to the jury during deliberations. Pursuant to a specific request, or because all exhibits go into the jury? I can't answer that question, Your Honor. I'm sorry. I just don't — I don't know. But I know the exhibit went to the jury, but I don't know if there was a specific request to see the exhibit or not. I'm sorry. I just don't know. Okay. All right, counsel. Thank you very much. We'll hear from the government. May it please the Court. Kelly Zusman, appearing on behalf of the United States. If I may begin by answering Judge Corman's question. In the District of Oregon, our standard practice is that admitted exhibits all go to the jury, so they don't have to request them. Let me talk, if I can, ask you some questions regarding FRERETA and some of the — along the lines we were discussing here. I guess I'd like to know what your position is when there's a possible sentencing enhancement. And if there is a statutory sentencing enhancement, is telling the defendant what penalty he faces under the sentencing enhancement enough? I'm just curious. You don't need to make any reference to what he would face should the sentencing enhancement not apply? And if so, why? And let me start by answering it this way. I think if we step back a little bit and look at the purposes of FRERETA, which are very distinct from Rule 11, FRERETA is designed to ensure that a defendant who is waiving one constitutional right to counsel is able to exercise a different constitutional right, and that is to represent himself. So trial judges have to walk a fairly fine line about making sure that they warn the defendant of the dangers of self-representation without overdoing it. Now, in direct response to your question, though, about the statutory maximum, I think this is pretty well covered by Gerritsen, which is the Court's obligation in FRERETA is to ensure that a defendant appreciates the magnitude of what he's facing. And that doesn't require a lot of specific detail. In this case, Mr. McElroy faced a potential life sentence in one of several different ways. So if the judge had agreed that the government had established through his prior convictions the statutory enhancement, he faced a mandatory life on both counts one and counts two. Alternatively, as was explained to him during the FRERETA colloquy, he also faced a potential life sentence if, in fact, the Court were to impose mandatory minimum terms on all six counts and run them consecutively. It would have added up to 90 years. JUSTICE KAGAN Well, I guess let me ask it this way. If the defendant knew the highest penalty he might face and still decided to represent himself, you're saying that's no error, but isn't that the type of reasoning that we rejected in Forrester? Can you talk to me about Forrester? Because it seemed like the Court there found error even though it assumed a higher sentence. And that was still error because the defendant did not have the correct information to make a fully informed decision. And I'm just trying to see how Forrester is distinguishable here, or at least the underlying point in Forrester that the defendant have the correct information, the right information and needs to have it to make a fully informed decision. And if there's a possible sentencing enhancement, he's told you might get life, you know, you're looking at life. But what happens if the sentencing enhancement doesn't apply? Does he thinking, well, okay, but if the sentencing enhancement doesn't apply, I'm upset and there's only 20 years that I have to worry about when actually here it was 50 years. And I just think it complicates things. And I'm trying to figure out when looking at Forrester and Gerritsen what the obligation is and what should have happened here. It seems like he was only given partial information and I'm not sure and I want to hear from both sides. Is that a problem when he's only given partial information? And my answer is no, there wasn't a problem here and for several reasons. The first is he was told accurately and Forrester involved a district judge. But you agree he wasn't told the 50 years. I agree he was not told the 50 years. And why wasn't that? Why is that not significant? And I think for several reasons. He was told that even without the enhancement, he faced a mandatory minimum of 25 years. So he was given that piece of information. He was told that if the penalty, if the enhanced penalty applied, he faced a life maximum. This case is factually distinguishable from Forrester in several respects. First, the district court in Forrester basically made a mistake on everything. Didn't accurately describe the charges and didn't accurately describe either the minimum or the maximum. Here, the only element that we're missing is the statutory cap that would have applied but for the penalty enhancement. So, and again, but stepping back, under Iowa versus Tovar, the court has said under Ferretta, we don't want scripts. We don't want district judges having to engage in scripts. And as Judge Smith identified, and we also know this from Romero-Ochoa, which is that there's no requirement that a district judge has to engage in all of these calculations and determinations at either the time of the guilty plea or at the time of the Ferretta waiver. So, Your Honor, my answer is yes. In the perfect world, he would have been told 25 minimum, 50 maximum unless the penalty applies and then it is a life, mandatory life. But he wasn't. But that doesn't matter because he was told, look, Mr. McElroy, if you want to represent yourself, you're facing a horrendous amount of time, whether it's 50 years, whether it's life, whether it's life as a basis, as a result of consecutive sentencing. For a man who was 47 years old at the time of this offense, he was looking at a long time. He knew that when he exercised his right to represent himself. And how do you reconcile Forrester? I reconcile Forrester because the Court was wrong about the charge, was wrong about the mandatory minimum, about the maximum, and Forrester only involved one count. This involved six counts, which again, if you run them consecutively, gets us back to life. It seems to me that because the judge was wrong, inaccurate in everything he told in Forrester, and here there wasn't anything wrong, it just didn't tell everything that defense counsel would have liked him to tell. But I'm troubled by the fact that if you follow his line of thinking, I don't know where it stops. It seems to me we're going to have appeals on every single Feretta hearing that somebody wants to appeal because they're going to say, well, you know, they told me this, but they didn't tell me that. And if they had told me that, I would have changed my mind. I don't think that's what the Supreme Court has said. They need to be able to make an effective decision. And I guess I would pick up on what you're saying. He knew all he needed to know that it was a very, very serious offense. Nobody lied to him. But are there things they could have told him besides that within the complexity of the sentencing? Of course they've got. But there's no end to that. Right. Is that a fair statement of the government's position? It's a very fair statement. And again, I go back to what the Supreme Court said in Iowa v. Tovar. In the Second Circuit, we cited United States v. Fore. In Fore, the district court said nothing about supervised release at all during the Feretta hearing. And the court said that's still fine because the defendant was aware of the magnitude of the risks that he was taking in engaging in self-representation. And I think we are in a very dangerous position if we start trying to micromanage what our trial judges say when they're supposed to be having a conversation with this defendant to ensure that they understand those three core Feretta principles. So possible penalties, in your view, means what? It means the penalty, the worst case scenario that he faces at the time he makes his election to proceed pro se. And that's precisely what he was informed of in this case. What's your best case for that point? What the judge has to tell the Feretta defendant is this is your worst case scenario. What's your best case? It's this one in Garrison. I think that's the best one we've got. That's the one that we cited extensively in our brief. Unless there are any more questions on Feretta, I'll move on to the issue about the exhibit that Mr. McElroy introduced, used to cross-examine Detective Powell, and then it formed the centerpiece for his closing argument. And that was his pitch to the jury wasn't about his guilt or innocence. It was about, allegedly, the violation of his due process rights through the course of this investigation. Mr. McElroy urged the jury to acquit him because he claimed the investigators violated his due process rights. And the centerpiece of that argument was that Detective Powell obtained a search warrant based upon an affidavit that wasn't supported by probable cause. So Mr. Levine highlights the fact that the government wouldn't have been prejudiced if, in fact, the court had allowed Mr. McElroy to withdraw the exhibit. But that's not the question. The question here is whether or not Judge Hernandez abused his discretion when he declined to allow Mr. McElroy to withdraw an exhibit after he'd used it extensively. And neither Mr. McElroy's counsel nor the government, I haven't been able to find any case in which any court anywhere has held that a judge abuses his discretion when he refuses to let someone withdraw an exhibit after they've used it. So I just think Judge Hernandez was well within his discretion. He pointed out why it was relevant based upon the line of questions that Mr. McElroy asked Detective Powell, which was he was attacking him, saying, well, isn't it true? You left this out. You didn't tell the issuing magistrate about this. And then in his closing argument, he says, this is the government out to get me. They're violating my due process rights. Look at what they did with this search warrant. So in terms of the attack on our lawyer's comments and rebuttal, they were all directly responsive to what the defendant had opened the door to with his closing, which is, look, he says there is no probable cause. We say there was. And you. Counsel, let me ask you this in sense of the timing. When, let me say this. Did the defendant raise the question of retracting the exhibit before or after he used the exhibit to cross-examine the detective and then do the closing? It was after, Your Honor. After, okay. So yeah, he'd already cross-examined him about it, which is. He'd already gotten the benefit of the use of the exhibit from the government's perspective. Right. Okay. And then I can, I'm more than prepared to answer any other questions you have about the other issues that he raised. Any other questions about my colleague? I don't believe we do. Absent questions from the court, I would submit. Okay. Thank you. Thank you. Thank you very much. Counsel, you don't have any time left. Your Honors, may I make a motion to the court to allow me five minutes or four minutes to address the third issue? You can make the motion and it's denied, but thank you for making it. All right. You're a good lawyer. I have 10 seconds to rebut on just, just 10 seconds, Your Honor. The court. No lawyer can do anything in 10 seconds. I, this will be 10 seconds. And you have, you have had your 10 seconds. Thank you very much. The, the burden on, it's the burden on the government to prove the waiver. Counsel, counsel, with respect. Thank you very much. We, ladies and gentlemen, you know, we have to keep the time clock here because otherwise it will go on ad nauseum. So, we have some able lawyers here. They represented their clients well. And we thank you. The case just argued is submitted. Thank you.
judges: M. Smith, Murguia, Korman